UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

BERNARD HARDRICK,

                Plaintiff,

v.

UNKNOWN BUSH,

                Defendant.
_____/

Case No. 2:22-cv-139

Honorable Paul L. Maloney

**OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

**Discussion**

**I.    Factual allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Baraga Correctional Facility (AMF) in Baraga, Baraga County, Michigan. The events about

which he complains, however, occurred at the Marquette Branch Prison (MBP) in Marquette, Marquette County, Michigan. Plaintiff sues MBP Inspector Unknown Bush.

Plaintiff alleges that legal property and electronics were seized from his cell on January 21, 2022, at the direction of Defendant Bush. Plaintiff filed a grievance against Bush three days later. The next day, Plaintiff received the bulk of his property back. Plaintiff was missing a motion to compel discovery in a pending civil case and some third-step grievance decisions.

Plaintiff was then called into Inspector Bush's office. Bush told Plaintiff that he did not take kindly to Plaintiff's grievances or kites threatening to sue Bush for confiscating Plaintiff's property. Bush informed Plaintiff that one item of electronic equipment, a JP6 player, would not be returned because it was broken when officers (not Bush) packed up the properly and, because it was broken, it was contraband. According to Plaintiff, Bush then told Plaintiff that Bush had the ability to alter telephone recordings and that he would use it against Plaintiff if Plaintiff pursued his grievance any further.

A couple of months later, Inspector Bush wrote a misconduct report charging Plaintiff with smuggling—or at least attempted smuggling—as evidenced by a telephone call between Plaintiff and an unknown party wherein Plaintiff communicated about smuggling contraband into the prison by way of "fake" legal mail. Plaintiff defended against the misconduct ticket by claiming that it was false, in retaliation for Plaintiff's filing of grievances and complaint, and based on a "spoofed" telephone call. Plaintiff also claimed the recorded call was with his attorney and, therefore, should not have been monitored.

On March 18, 2022, Hearings Officer Mohrman conducted a hearing on the Class I smuggling misconduct. Plaintiff attaches the hearing report, which discloses the following factual findings:

Based upon the report which is logical and persuasive and consistent with the audio of the telephone call, I find the prisoner is guilty. The prisoner made a telephone call and the prisoner and the called party (CP) were discussing smuggling glasses, tobacco, marijuana, matches and THC oil into a correctional facility. The prisoner claimed this conversation had been altered and that the inspector and counselor had both told him that they had done so. However not only did both staff members deny telling him this but the ability to alter the telephone conversations is not something the facility does or is capable of doing. In addition the claim this was his attorney is not believed because of the conversations between the prisoner and CP. Also there is a specific procedure for identifying attorneys and the prisoner had not identified this party as an attorney. In one part of their conversation the prisoner asks if he had a printer and if he knew an attorney as he would have to create an attorney label as he was to send in the items as legal mail. The CP had no printer and the prisoner said he would have to take care of the label himself. This prisoner is guilty of soliciting prohibited items to be sent into a facility disguised as legal materials.

(Class I Misconduct Hearing Report, ECF No. 1-5, PageID.24.) Plaintiff was sanctioned with 30-days' loss of privileges.

Plaintiff appealed, reiterating his defense that Bush altered the phone call in retaliation for Plaintiff's grievances, as well as the claim that CP was Plaintiff's attorney. On May 20, 2022, Plaintiff's "request for rehearing" was denied. Plaintiff asks this Court to review the misconduct result.

Plaintiff contends that Defendant Bush: (1) violated the Fourth Amendment when he illegally searched and seized Plaintiff's property; (2) violated the Fourteenth Amendment when he took property without due process; (3) violated the First Amendment right of access to the courts when he took Plaintiff's legal documents; (4) violated the First Amendment right to be free of retaliation for protected conduct when he illegally seized and converted Plaintiff's legal material and electronics; and (5) violated the First Amendment right to be free of retaliation for protected conduct when he wrote a false misconduct report against Plaintiff. Plaintiff also claims that Defendant Bush's conduct violates state law.

Plaintiff seeks a declaration that Defendant Bush violated Plaintiff's rights as described above, as well as compensatory, punitive, and nominal damages in the amount of $210,000.00.

## II.     Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating

federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

>           A.        **Fourth Amendment violation**

Plaintiff contends that Defendant violated his Fourth Amendment rights by authorizing the search of Plaintiff's cell and the seizure of his property. In *Hudson v. Palmer*, 468 U.S. 517 (1984), the Supreme Court considered and rejected a Fourth Amendment claim similar to Plaintiff's. In that case, a prison official searched a prisoner's cell and destroyed some of his legal papers in the process. *Id.* at 519, 535. The prisoner claimed that the prison official's conduct constituted an unreasonable search and seizure of his property, in violation of the Fourth Amendment. *Id.* at 530. The Court disagreed.

First, the Court recognized that while prisoners are not beyond the reach of the Constitution, "curtailment of certain rights is necessary, as a practical matter, to accommodate a 'myriad of institutional needs and objectives' of prison facilities, . . . chief among which is internal security." *Id.* at 523–24 (internal citation omitted). The Court then determined that the official's search of the prisoner's cell did not violate the Fourth Amendment because "society is not prepared to recognize as legitimate any subjective expectation of privacy that a prisoner might have in his prison cell." *Id.* at 526. According to the Court, "[a] right of privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order." *Id.* at 527–28.

For similar reasons, the Court held that "the Fourth Amendment does not protect against seizures in a prison cell [.]" *Id.* at 528 n.8. According to the Court, "[p]rison officials must be free to seize from cells any articles which, in their view, disserve legitimate institutional interests." *Id.*

Applying *Hudson* to Plaintiff's case, the Fourth Amendment did not prohibit Defendant Bush from authorizing the search of Plaintiff's cell and the seizure of legal documents or electronics. Moreover, it did not prevent the confiscation of items in Plaintiff's cell because they appeared to be contraband. Therefore, Plaintiff fails to state a claim for a violation of his Fourth Amendment rights.

### B.       Fourteenth Amendment

Plaintiff next contends that Bush's confiscation of Plaintiff's documents and electronics, either temporarily or permanently, constitutes a deprivation of Plaintiff's property without due process of law. Plaintiff's due process claim is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986).

Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law." *Parratt*, 451 U.S. at 537. This rule applies to both negligent and intentional deprivations of property, as long as the deprivation was not done pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530–36 (1984). Plaintiff specifically claims that Defendant Bush took his property without complying with the established state procedure, i.e., a contraband removal record and notice of intent to conduct an administrative hearing.

Because Plaintiff's claim is premised upon allegedly unauthorized acts of a state official, he must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479–80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his § 1983 due-process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Plaintiff has not sustained his burden in this case. Plaintiff has not alleged that state post-deprivation remedies are inadequate. Moreover, an adequate state post-deprivation remedy is, or at least was, available to him. Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state and any of its departments or officers." Mich. Comp. Laws § 600.6419(1)(a) (eff. Nov. 12, 2013). The Sixth Circuit specifically has held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480. Plaintiff does not allege any reason why a state-court action would not afford him complete relief for the deprivation, either negligent or intentional, of his personal property. Accordingly, Plaintiff fails to state a claim against Defendant Bush for deprivation of property without due process of law.

### C.    First Amendment access to the courts

Plaintiff suggests in his complaint and the attached grievance that Defendant Bush, by seizing all and retaining some of Plaintiff's legal documents, interfered with Plaintiff's access to the courts. It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The principal issue in *Bounds* was whether the states must protect the right of access to the courts by providing law libraries or alternative sources of legal information for prisoners. *Id.* at 817. The Court further noted that in addition to law libraries or alternative sources of legal knowledge, the states must provide indigent inmates with "paper and pen to draft legal documents, notarial services to authenticate them, and with stamps to mail them." *Id.* at 824–25. The right of access to the courts also prohibits prison officials from erecting barriers that may impede the inmate's access to the courts. *See Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992).

An indigent prisoner's constitutional right to legal resources and materials is not, however, without limit. In order to state a viable claim for interference with his access to the courts, a

plaintiff must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000. In other words, a plaintiff must plead and demonstrate that the shortcomings in the prison legal assistance program or lack of legal materials have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim. *Lewis*, 518 U.S. at 351–53; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). The Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355. "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc). Moreover, the underlying action must have asserted a non-frivolous claim. *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (*Lewis* changed actual injury to include requirement that action be non-frivolous).

In addition, the Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353 & n.3). "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.* at 415. In order to state a viable claim for interference with access to the courts, Plaintiff must show actual injury to nonfrivolous pending or contemplated litigation. *See Lewis*, 518 U.S. at 349; *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508,

8

511 (6th Cir. 2001); *Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop v. Johnson*, 977 F.2d 996, 1000 (6th Cir. 1992).

Plaintiff makes passing reference to cases pending at the time the legal documents were taken, but he does not allege any actual injury—any lost remedy—occasioned by the seizure or retention of his legal documents. Accordingly, Plaintiff has failed to state a claim against Defendant Bush for interference with Plaintiff's access to the courts.

### D.      First Amendment retaliation by seizing and converting property

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

The filing of a nonfrivolous prison grievance is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). Plaintiff attaches two prison grievances to his complaint regarding Bush's search of his cell. He also reports that one of the staff members he questioned regarding the unlawful seizure of his property suggested that it may have been motivated by pending grievances and lawsuits he filed against MBP staff. Although Plaintiff does not identify the specific grievances or lawsuits, his litigation history in this Court

discloses that he is a prolific filer of lawsuits and grievances. Accordingly, the Court concludes

that Plaintiff satisfies the first element of a retaliation claim; he was engaged in protected conduct.

To establish the second element of a retaliation claim, a prisoner-plaintiff must show

adverse action by a prison official sufficient to deter a person of ordinary firmness from exercising

his constitutional rights. *Thaddeus-X*, 175 F.3d at 396. The adverseness inquiry is an objective one

and does not depend on how a particular plaintiff reacted. The relevant question is whether the

defendants' conduct is "*capable* of deterring a person of ordinary firmness"; the plaintiff need not

show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) (emphasis in original).

A cell search may be considered sufficiently adverse to satisfy the adverse-action requirement of

*Thaddeus-X*, where the search leaves the cell in disarray and results in the confiscation or

destruction of materials. *See Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) (citing *Walker v.*

*Bain*, 257 F.3d 660, 664 (6th Cir. 2001)). Therefore, the Court concludes that Plaintiff's allegations

satisfy the second element of a retaliation claim.

Plaintiff's claim fails, however, at the third step. Plaintiff has not alleged facts from which

the Court might infer that Bush's authorization of the search and seizure was motivated by

Plaintiff's grievances against Bush regarding the search. That is so because the adverse action

preceded the protected conduct. *See, e.g.*, *Cook v. Garner*, No. 19-5931, 2020 WL 4876309, at *4

(6th Cir. Jun. 17, 2020) ("Cook's transfer to the Davidson County office could not be considered

an adverse action taken in response to this protected conduct, because the transfer preceded the

protected conduct."); *Daniels v. School Dist. Of Philadelphia*, 776 F.3d 181, 196 (3d Cir. 2015)

("We need not consider the first alleged instance of adverse action as Daniels's forced transfer

without notification preceded her first protected activity . . . .").

Plaintiff alleges that Prisoner Counselor Nurkala (not a party), on the day of the seizure, speculated that "the seizure of Plaintiff's property was most likely due to all the grievances and lawsuits that he had filed against staff." (Compl., ECF No. 1, PageID.4.) There are no facts alleged, however, to support Nurkala's speculation regarding possible motivations for the seizure, nor does Nurkala's statement, on its face, attribute any motivation to Defendant Bush. Because Plaintiff has failed to allege any facts to support his conclusory statement that Bush was motivated to search Plaintiff's cell and seize property by Plaintiff's extensive grievance and litigation history, Plaintiff has failed to state this First Amendment retaliation claim.

### E.        First Amendment retaliation by submitting a false misconduct report

Almost two months after the search of Plaintiff's cell and the seizure of his property, Plaintiff had another run-in with Defendant Bush. Plaintiff contends that Bush retaliated against Plaintiff, presumably for the "search and seizure" grievances, by filing a false misconduct report accusing Plaintiff of arranging with an outside party to smuggle contraband into the prison through the mails.

Once again, Plaintiff's grievances are protected conduct. Moreover, the "loss of privileges" sanction attendant to a misconduct determination would certainly rise to the level of an adverse action. *Maben v. Thelen*, 887 F.3d 252, 266–67 (6th Cir. 2018) (holding that "actions that result in more restrictions and fewer privileges for prisoners are considered adverse" (quoting *Hill v. Lapin*, 630 F.3d 468, 474 (6th Cir. 2010))).

Plaintiff's allegations fall short again, however, with regard to the retaliatory motive. Plaintiff states that Bush expressly threatened to file false misconduct charges based on manufactured evidence if Plaintiff continued to press his grievances. (Declaration of Bernard Hardrick Against Smuggling Misconduct Report, ECF No. 1-4, PageID.21–22; Compl., ECF No. 1, PageID.5, ¶ 32.) Plaintiff alleges that Bush's false smuggling Class I, or major, misconduct

11

was the culmination of that threat. Accepting those allegations as true would certainly support the

inference that Bush was motivated to take the adverse action by some retaliatory animus against

Plaintiff.

But the Court cannot accept those allegations as true. Hearing Officer Mohrman rejected

Plaintiff's retaliation defense, expressly determined that Bush had not, and could not, "spoof" the

telephone recording that established Plaintiff's guilt, and determined that Plaintiff had solicited

another to smuggle contraband into the prison. Under certain circumstances, such findings are

entitled to preclusive effect.

A prisoner's claim that he was falsely accused of a major misconduct is barred where there

has been a finding of guilt. *See Peterson v. Johnson*, 714 F.3d 905, 917 (6th Cir. 2013) (holding

that a factual finding in a major misconduct proceeding has preclusive effect and is not subject to

challenge in a § 1983 action). However, as the Sixth Circuit subsequently qualified in *Roberson v.*

*Torres*, 770 F.3d 398 (6th Cir. 2014), not every factual finding is entitled to preclusive effect.

Instead,

> the question of preclusion cannot be resolved categorically, as it turns on case-
> specific factual questions such as what issues were actually litigated and decided,
> and whether the party to be precluded had sufficient incentives to litigate those
> issues and a full and fair opportunity to do so—not just in theory, but in practice.
> [*Peterson*, 714 F.3d] at 916–17. It likewise turns on the court's "sense of justice
> and equity," *Blonder-Tongue Labs., v. Univ. of Ill. Found.*, 402 U.S. 313, 334
> (1971), which may require a case-by-case analysis of surrounding circumstances.

*Roberson*, 770 F.3d at 404–05.

In *Maben v. Thelen*, the Sixth Circuit further clarified the limitations of the preclusion

doctrine, as follows:

> To determine whether we must give preclusive effect to "factfinding from
> Michigan prison hearings," we look to four requirements, all of which must be met:
> (1) the state agency "act[ed] in a 'judicial capacity'"; (2) the hearing officer
> "resolved a disputed issue of fact that was properly before it"; (3) the prisoner "had
> an adequate opportunity to litigate the factual dispute"; and, (4) if these other three

requirements are met, we must "give the agency's finding of fact the same preclusive effect it would be given in state courts." *Peterson v. Johnson*, 714 F.3d 905, 911–13 (6th Cir. 2013) (internal citation and quotation marks omitted).

In *Peterson*, the Court considered, as a matter of first impression, whether a hearing officer's factual determination at a Michigan *major* misconduct hearing has preclusive effect in litigation brought by a prisoner under § 1983. *Id.* at 908, 911. The Court concluded that, because all four requirements were met, the "hearing officer's *factual* finding that [the prisoner] was the one who grabbed [the officer's] hand precludes a contrary finding in federal court." *Id.* at 917. In *Roberson v. Torres*, the Court considered the same issue, and identified the four requirements listed above. 770 F.3d 398, 403–04 (6th Cir. 2014). The Court said that *Peterson* does not mean that "any factual findings by a hearing officer in a major-misconduct hearing in a Michigan prison are to be accorded preclusive effect." *Id.* at 404. "*Peterson* is not a blanket blessing on every factual finding in a major-misconduct hearing." *Id.*

> Indeed, the question of preclusion cannot be resolved categorically, as it turns on case-specific factual questions such as what issues were actually litigated and decided, and whether the party to be precluded had sufficient incentives to litigate those issues and a full and fair opportunity to do so— not just in theory, but in practice. It likewise turns on the court's sense of justice and equity, which may require a case-by-case analysis of surrounding circumstances.

*Id.* at 404–05 (internal citations and quotation marks omitted). The Court declined to decide the preclusion question, and remanded the case to the district court to consider the argument for the first time. *Id.* at 405. The Court instructed the district court to "give particular attention to the fairness and accuracy of the factual findings made by the major-misconduct hearing officer." *Id.* The Court advised that "[n]umerous inquiries may be relevant to the district court's analysis," like "why the hearing officer refused to review the alleged video of the incident, whether the hearing officer provided a sufficient and reasonable basis for her factual findings, and whether the testimony of other witnesses corroborated the accounts provided by either [the prisoner] or [the officer]." *Id.* at 405.

*Maben*, 887 F. 3d at 259.

In the instant case, Plaintiff's major misconduct hearing was conducted before an administrative law judge acting in a judicial capacity. Plaintiff expressly defended against the misconduct charge by arguing that Defendant Bush issued the misconduct ticket based on "spoofed" evidence, as he had previously threatened, in retaliation for Plaintiff's continued pursuit of his grievances against Bush relating to the January search and seizure. The hearings officer

found no evidence to support Plaintiff's claim that Bush had "spoofed" the telephone recording in retaliation for Plaintiff's grievances. Indeed, Hearings Officer Mohrman found all the facts that Plaintiff alleged in his defense—not just the facts related to his retaliation claim—incredible.

Plaintiff had ample opportunity to litigate the issue, and exercised that opportunity, basing his defense to the misconduct principally on the alleged threat by Bush to "spoof" evidence in retaliation for Plaintiff's pursuit of administrative grievances. Precluding Plaintiff from relitigating the same disputed facts now comports with the Court's "sense of justice and equity." As a consequence, the elements of the *Peterson/Roberson/Maben* test are met. The decision of Hearings Officer Mohrman therefore precludes Plaintiff's claim that Defendant Bush "spoofed" evidence against Plaintiff in retaliation for Plaintiff's pursuit of administrative grievances. Accordingly, the Court concludes that Plaintiff has failed to state a retaliation claim against Bush premised on the retaliatory act of writing a false misconduct report.

### F.      State law claims

Plaintiff seeks to invoke this Court's supplemental jurisdiction over his state-law claims. The Court declines to exercise jurisdiction. Ordinarily, where a district court has exercised jurisdiction over a state-law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the court will dismiss the remaining state-law claims. *See Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 521 (6th Cir. 2007) ("Generally, once a federal court has dismissed a plaintiff's federal law claim, it should not reach state law claims." (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966))); *see also Southard v. Newcomb Oil Co., LLC*, 7 F.4th 451, 455 (6th Cir. 2021) (citing *Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006)) (recognizing that once a federal court no longer has federal claims to resolve, it "should not ordinarily reach the plaintiff's state-law claims); *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). In determining whether to retain

14

supplemental jurisdiction, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld*, 994 F.2d at 1182; *see also Moon*, 465 F.3d at 728 ("Residual jurisdiction should be exercised only in cases where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh our concern over needlessly deciding state law issues." (internal quotation marks omitted)). Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012).

Here, the balance of the relevant considerations weighs against the continued exercise of supplemental jurisdiction. Accordingly, Plaintiff's state-law claims will be dismissed without prejudice.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's federal claims will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Because all of Plaintiff's federal claims are dismissed, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims. Those claims are dismissed without prejudice.

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610–11,

unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of

§ 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump

sum.

       This is a dismissal as described by 28 U.S.C. § 1915(g).

       A judgment consistent with this opinion will be entered.


Dated:    September 20, 2022                           /s/ Paul L. Maloney
                                                   Paul L. Maloney
                                                   United States District Judge